# EXHIBIT 1

Return Date: No return date scheduled
Hearing Date: 7/20/2020 9:30 AM - 9:30 AM
Courtroom Number: 2402
Location: District 1 Court
       Cook County, IL

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

FILED
3/19/2020 5:07 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH03377

8913194

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MELISSA THORNLEY, DEBORAH BENJAMIN-KOLLER, and JOSUE HERRERA, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CLEARVIEW AI, INC., | ) ) |
| Defendant. | ) ) ) |

No. 2020CH03377

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiffs Melissa Thornley, Deborah Benjamin-Koller, and Josue Herrera ("Plaintiffs"), individually and on behalf of all others similarly situated (collectively, the "Class"), bring the following Class Action Complaint pursuant to Illinois Code of Civil Procedure, 735 ILCS 5/2-801 and 2-802, against Defendant Clearview AI, Inc. ("Clearview AI" or "Defendant") to redress and curtail Defendant's unlawful collection, capture, use, and storage of Plaintiffs' biometric data.

## NATURE OF THE ACTION

1.      This action arises out of defendant Clearview AI's unprecedented invasion of the privacy rights of Illinois citizens in blatant violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA" or the "Act").

2.      Clearview AI is an artificial intelligence company founded in 2016 that secretly created a database (the "Clearview Database" or "Database") of over 3 billion facial scans and  a facial recognition application (the "Clearview App" or "App") that it markets to private companies and law enforcement users in Illinois and around the country enabling such users to engage in

facial scan recognition, on their mobile devices and computers, of individuals in the Clearview Database.

3. Clearview AI created its Database of facial scans from photographs it "scraped" from, *inter alia*, social media platforms Facebook, Twitter, Instagram, and LinkedIn, video sharing platform YouTube, and payment platform Venmo. Scraping is the automated extraction of data from websites and is barred by the terms of use of most social media platforms and other websites absent prior authorization. Clearview AI's scraping of photographs, as alleged herein, was without authorization from the individuals in the photographs or the platforms and in violation of the platforms' respective terms of service.

4. Clearview AI sells access to its Database and App to private companies and law enforcement agencies, including in the State of Illinois. Clearview AI's customers can upload any photograph(s) to Clearview AI's Database, at which point Clearview AI's facial recognition tool scans the face(s) in the uploaded photograph(s) and converts the facial geometries of individuals pictured in the photograph(s) into mathematical formulas, or "vectors." Clearview's App then identifies the individuals in the photograph(s) by comparing the newly captured facial geometries with vectors already stored in Clearview AI's database. If there is a match, Clearview AI displays all the photographs of the matched individual(s) to App users along with links to the source of the photograph(s) that produces the match(es). In short, Clearview AI's customers are able to upload any photograph to Clearview AI's Database and have Clearview AI run a facial scan to identify any individual in the photograph by comparing the individual's face to the facial scans in Clearview AI's Database.

5. BIPA bars this activity absent notice and consent. By regulating the collection, capture, retention, and dissemination of biometric identifiers such as facial geometry data, the

FILED DATE: 3/19/2020 5:07 PM    2020CH03377

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

Illinois legislature provided Illinois citizens the right to control their biometric identifiers. Clearview AI's use of its Database and App constitute one of the most egregious violations of BIPA's privacy rights yet uncovered.

6.      Accordingly, Plaintiffs, on behalf of themselves as well as the putative Class, seeks an order: (1) declaring that defendant Clearview AI's conduct violates BIPA; (2) enjoining defendant Clearview AI's unlawful activities and ordering the destruction of defendant Clearview AI's Database insofar as it includes Illinois citizens whose facial scans were created by defendant Clearview AI without their informed consent to such creation; and (3) awarding statutory damages to Plaintiffs and the proposed Class.  Because the Defendant's conduct is so blatantly violative of BIPA, Plaintiffs seek statutory damages of $5,000 per violation, as applicable for intentional or reckless violations of the Act.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because it conducts business in Illinois and committed the statutory violations alleged herein in Cook County and throughout Illinois.

8.      Venue is proper in Cook County because Defendant conducts business in this State and, in particular, in Cook County, and committed the statutory violations alleged herein in Cook County and throughout Illinois.

## PARTIES

### A.      Plaintiffs

9.      Plaintiff Melissa Thornley is a citizen of the State of Illinois, residing in Cook County.

10.      Plaintiff Deborah Benjamin-Koller is a citizen of the State of Illinois, residing in Cook County.

FILED DATE: 3/19/2020 5:07 PM    2020CH03377

11.     Plaintiff Josue Herrera is a citizen of the State of Illinois, residing in Cook County.

**B.      Defendant**

12.     Defendant Clearview AI, Inc. is a business incorporated under the laws of the State of Delaware that does business in the State of Illinois, including in Cook County.

## FACTUAL BACKGROUND

**I.      Biometric Identifiers and Biometric Data**

13.     Biometrics is the measurement and analysis of unique physical or behavior characteristics. Biometric data can be used to identify individuals, for example, through the use of fingerprint scans, facial recognition, or voice patterns. A dataset that corresponds to a person's unique physical or behavioral characteristic used for identification purposes, (*e.g.,* data corresponding to a fingerprint, voice pattern, retina, or facial features), is commonly referred to as a "biometric identifier."

14.     Because individuals' biometric characteristics cannot be easily changed (if at all), the use of biometric identifiers has serious implications for an individual's privacy interests. An entity that obtains possession of an individual's biometric identifier is able to identify that individual anywhere a camera or microphone is present.  Despite consumers' ever-growing concerns with invasions of their privacy, the use of biometric data by private companies is accelerating, with much of this growth attributable to the increased capability of smartphones and other internet-connected devices to capture and collect an individual's biometric data.

**II.      The Illinois Biometric Information Privacy Act**

15.     BIPA was enacted in 2008 to give Illinois citizens the ability – and statutory right – to control their biometric identifiers and biometric information by requiring private companies

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

to obtain their consent before creating and collecting such identifiers and information, including the right to prevent such creation and collection by withholding consent.

16.    In enacting BIPA, the General Assembly recognized that the full extent of the damage that can result from the compromise or misuse of an individual's biometric data cannot be ascertained in advance. The General Assembly, thus, sought to head off such problems before they occur by imposing safeguards to protect individuals' privacy rights in their biometric identifiers and biometric information.

17.    BIPA ensures that individuals' privacy rights in their biometric identifiers and biometric information are protected by making it unlawful for a private company to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (l) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."[1]

18.    BIPA's definition of "biometric identifier" expressly includes a "retina or iris scan, fingerprint, voiceprint, or *scan of* hand or *face geometry*."[2]

---

[1]    740 ILCS 14/15 (b).

[2]    740 ILCS 14/10 (emphasis added).

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

19.     BIPA provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information."[3]

20.     BIPA further protects consumer's right to privacy in their biometric identifiers and biometric information by making it unlawful for a private entity to "disclose, redisclose, or otherwise disseminate" an individual's biometric identifier and/or biometric information unless:

> (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;
>
> (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;
>
> (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or
>
> (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.[4]

21.     BIPA further requires private entities in possession of biometric identifiers or biometric information to:

> develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.[5]

---

[3]     740 ILCS 14/15(c).

[4]     740 ILCS 14/15 (d).

[5]     740 ILCS 14/15 (a).

6

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

22.     BIPA further provides that, absent a valid warrant or subpoena, a private entity in possession of biometric identifiers or biometric information "must comply with its established retention schedule and destruction guidelines."[6]

23.     The General Assembly intended the relief provided to aggrieved individuals to have substantial force by subjecting private entities that fail to comply with BIPA to liability, including statutory damages, to prevent unforeseen problems that cannot be undone before they occur. Thus, private entities that fail to adhere to the safeguards imposed by BIPA are subject to statutory damages, injunctions, attorneys' fees, and litigation expenses for each violation of BIPA.[7]  In particular, BIPA provides for statutory damages for each violation as follows:

(1) $1,000 or actual damages, whichever is greater, for negligent violations; or

(2) $5,000 or actual damages, whichever is greater, for intentional or reckless violations.[8]

## III.   Clearview AI

24.     Clearview AI's principal business is the creation and maintenance of the Clearview AI Database and the marketing, promotion, maintenance, and operation of the Clearview App to enable users to access the Database's facial scans.

25.     The Clearview App compares the facial geometries of individuals pictured in photographs uploaded by its users to those already in the Clearview Database. If the face of an individual in an uploaded photograph matches that of an individual whose photograph has already been scraped into and facially scanned in the Clearview Database, the Clearview App displays the

---

[6]      *Id*.

[7]      740 ILCS 14/20.

[8]      *Id*.

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

matched facial scan(s) and identifies the source of the photograph(s) from which the Database facial scan(s) were generated.

## SUBSTANTIVE ALLEGATIONS

I.   **Clearview AI Illegally Obtained Billions of Individuals' Photographs through an Unauthorized Practice Known as Scraping.**

26.   Clearview AI built its Database of over three billion photographs by downloading every image it could access. This includes photographs from individuals' social media profiles on, *inter alia*, the Facebook, YouTube, Instagram, Twitter, LinkedIn, and Venmo platforms through a process known as "scraping." Scraping is the automated extraction of data from websites and is barred by the terms of use of most social media platforms and other websites absent prior authorization.

27.   Some platforms, such as Facebook, take proactive measures to prevent scraping. For example, Facebook places significant limitations on what a Facebook user may access without creating a Facebook account and logging in. Further, Facebook employs measures to prevent search engines from cataloging Facebook's data and photos. Clearview AI circumvented the preventive measures employed by Facebook and others websites to gain access fraudulently to, and scrape, the photographs of millions of Illinois citizens without their knowledge or consent.

28.   After learning of Clearview AI's scraping practices, Facebook, Instagram, and Twitter sent cease-and-desist letters to Clearview AI.

II.   **Clearview AI Scanned the Face Geometry of Millions of Illinois Residents and Stored the Resulting Vectors in Violation of BIPA.**

29.   Clearview AI subjects each photograph it scrapes from the internet to Clearview AI's "state-of-the-art neural net" facial scanning technology.  Clearview AI explains the process as converting an individual's face geometry "into mathematical formulas, or vectors, *based on*

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

*facial geometry* — like how far apart a person's eyes are."[9] Clearview AI then groups similar facial geometry-based vectors (*i.e.,* vectors of the same face) together into "neighborhoods" within its Database.[10] Every Illinois citizen pictured in photographs scraped by Clearview AI has had his or her face geometry scanned, converted into a mathematical formula, and stored in Clearview AI's Database.

30.     The vectors Clearview AI creates are biometric identifiers that Clearview AI uses to identify individuals in photographs uploaded to Clearview AI's Database based on their face geometry. Clearview AI has, thus, engaged in and continues, on an ongoing basis, to engage in the precise conduct BIPA regulates. Clearview AI, however, has not provided the notices, nor obtained the consent required by BIPA, before including Illinois citizens in its Database. Clearview AI purposefully has not provided such notices or obtained such consent to ensure that its Database is as comprehensive as possible.

31.     Until late 2019, Clearview AI's website (https://clearview.ai) contained only the statement "Artificial Intelligence for a better world", a clickable button that read "REQUEST ACCESS" and the following fictional address: "145 W 41st St, New York City, NY, 10036[.]"[11]

32.     Clearview AI's efforts to remain hidden from public scrutiny were successful until the non-profit organization Open the Government discovered the company through public records requests made to police departments across the country.

---

[9]     Kashmir Hill, *The Secretive Company That Might End Privacy as We Know It*, N.Y. TIMES (Jan. 18, 2020) (emphasis added), https://www.nytimes.com/2020/01/18/technology/clearview-privacy-facial-recognition.html (last visited Feb. 21, 2020).

[10]     *Id.*

[11]     *Clearview.AI Website as of Dec. 5, 2019*, INTERNET ARCHIVE WAYBACK MACHINE, https://web.archive.org/web/20191205141417/https://clearview.ai/ (last visited Feb. 5, 2020).

FILED DATE: 3/19/2020 5:07 PM    2020CH03377

### III.    Clearview AI's Tool Jeopardizes
###         the Safety of Illinois Citizens and will Transform Illinois Society.

33.    Clearview AI's "research tool" is a technology that Google has refused to release out of concern that the "'union of mobile tracking and face recognition'" could be used "'in a very bad way.'"[12] The Clearview App has and continues to put Illinois citizens at risk for their physical safety, privacy, and right to be free from unwarranted surveillance and arrests.

34.    In 2011, the Federal Trade Commission ("FTC") issued a report that discussed the dangers an application, such as the Clearview App, could pose to individuals, commenting that "a mobile app that could, in real-time, identify anonymous individuals on the street or in a bar could cause serious privacy and physical safety concerns."[13] For example, "a stranger could surreptitiously use the camera on his mobile phone to take a photo of an individual who is walking to work or meeting a friend for a drink and learn that individual's identity – and possibly more information, such as her address – without the individual even being aware that her photo was taken."[14] Clearview AI has enabled precisely this behavior and has therefore placed Illinois citizens at risk of physical harm or stalking through the misuse of their facial recognition tool. As

---

[12]    Bianca Bosker, *Facial Recognition: The One Technology Google Is Holding Back*, HUFFINGTON POST (June 1, 2011), https://www.huffpost.com/entry/facial-recognition-google_n_869583 (last visited Feb. 21, 2020).

[13]    Federal Trade Commission Staff, *Best Practices for Common Uses of Facial Recognition Technologies*, FEDERAL TRADE COMMISSION (Oct. 2012), https://www.ftc.gov/sites/default/files/documents/reports/facing-facts-best-practices-common-uses-facial-recognition-technologies/121022facialtechrpt.pdf (last visited Feb. 21, 2020).

[14]    *Id.*

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

a New York Police Department ("NYPD") insider recently commented, "'[i]t only takes one cop to put in his ex-girlfriend's photo in there and see who she's dating now.'"[15]

35.     Nor are there only hypotheticals as to how facial recognition technology can be misused. According to reports, the Chinese government has used facial recognition technology to target, profile, and track minority populations such as Uighurs and Tibetans.[16] One feature of the system employed by the Chinese government has been described as follows: "If originally one Uighur lives in a neighborhood, and within 20 days six Uighurs appear . . . it immediately sends alarms to law enforcement."[17] China has subjected members of these populations to detainment in so called "reeducation centers" where they are subjected to numerous forms of human rights violations including the raping of women, as well as psychological and medical experimentation.[18]

36.     Publicly, Clearview AI has attempted to quell fears of misuse of its facial recognition tool by posting a "code of conduct" stating that users should "'only use the Services for law enforcement or security purposes that are authorized by their employer and conducted pursuant to their employment.'"  Privately, however, Clearview AI has encouraged misuse of its App. For example, Clearview AI emailed a law enforcement officer asking:

> "Have you tried taking a selfie with Clearview yet?" the email read. "It's the best way to quickly see the power of Clearview in real time. *Try your friends or family*

---

[15]     Craig McCarthy, *Rogue NYPD cops are using facial recognition app Clearview*, N.Y. POST (Jan. 23, 2020), https://nypost.com/2020/01/23/rogue-nypd-cops-are-using-sketchy-facial-recognition-app-clearview/ (last visited Feb. 21, 2020).

[16]     Paul Mozur, *One Month, 500,000 Face Scans: How China Is Using A.I. to Profile a Minority*, N.Y. TIMES (Apr. 14, 2019), https://www.nytimes.com/2019/04/14/technology/china-surveillance-artificial-intelligence-racial-profiling.html (last visited Feb. 21, 2020.

[17]     *Id.* (quotation marks omitted).

[18]     David Stavrou, *A Million People Are Jailed at China's Gulags. I Managed to Escape. Here's What Really Goes on Inside*, HAARETZ (Oct. 17, 2019), https://www.haaretz.com/amp/world-news/.premium.MAGAZINE-a-million-people-are-jailed-at-china-s-gulags-i-escaped-here-s-what-goes-on-inside-1.7994216? (last visited Feb. 21, 2020).

FILED DATE: 3/19/2020 5:07 PM    2020CH03377

> . . . Your Clearview account has **unlimited** searches. *So feel free to run wild with your searches*[.]"

Clearview AI also encourages law enforcement officers to invite colleagues to sign up for Clearview AI without going through official channels by providing an "Invite User" button within the App and promising to give any officer a demo account "'immediately.'"[19]

37.    Moreover, recent disclosure of Clearview AI's customer list has revealed that "Clearview AI's facial recognition has been deployed at every level of American society and is making its way around the world."[20] The list of Clearview AI's customers includes private companies, including companies involved in retail (Macy's, BestBuy, Kohls, Albertson's, Rite Aid, and Walmart), banking (Wells Fargo and Bank of America), gaming (Las Vegas Sands and Pechanga Resort Casino), entertainment and sports (Madison Square Garden, Eventbrite, and the NBA), academic institutions (University of Alabama and Columbia University), as well as numerous federal, state, and local government agencies.  In February 2020, Clearview AI Chief Executive Officer Hoan Ton-That stated on Fox Business that Clearview AI's technology was "strictly for law enforcement."[21] That statement was false.

38.    Rather, Clearview AI has "taken a flood-the-zone approach to seeking out new clients, providing access not just to organizations, but to individuals within those organizations —

---

[19]    Ryan Mac, Caroline Haskins and Logan McDonald, *Clearview AI Once Told Cops To "Run Wild" With Its Facial Recognition Tool. It's Now Facing Legal Challenges.,* BUZZFEED NEWS (Jan. 28, 2020) (italics added), https://www.buzzfeednews.com/article/ryanmac/clearview-ai-cops-run-wild-facial-recognition-lawsuits (last visited Mar. 18, 2020).

[20]    Ryan Mac, Caroline Haskins and Logan McDonald, *Clearview's Facial Recognition App Has Been Used by The Justice Department, ICE, Macy's, Walmart, And The NBA*, BUZZFEED NEWS (Feb. 27, 2020), https://www.buzzfeednews.com/article/ryanmac/clearview-ai-fbi-ice-global-law-enforcement (last visited Mar. 9, 2020).

[21]    *Id.* (quotation marks omitted).

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

sometimes with little or no oversight or awareness from their own management."[22] According to reports, Clearview AI is being used by people affiliated with over 2,200 companies, law enforcement, and government agencies[23] as well as a select group of wealthy and well-known individuals.

39.     Clearview AI's unfettered user enrollment outside of official channels has already led to rampant misuse. For example, despite the fact that "'[t]here is no institutional relationship between the NYPD and Clearview,'" dozens of NYPD officers have been using the Clearview App on their personal phones without any departmental approval or oversight.[24] Additionally, one man used the Clearview App to photograph and identify a man he saw with his daughter.[25]

40.     Compounding the risk of misuse is the risk of the Clearview App returning false positives, which will lead to unwarranted arrests. The London Metropolitan Police recently engaged in several trial runs of "live facial recognition" ("LFR"). Examination of the trial resulted in a finding that that "[a]cross the six trials that were evaluated, the LFR technology made 42 matches – in only eight of those matches can the report authors say with absolute confidence the technology got it right."[26] And research shows that facial recognition technology returns false positives at higher rates when attempting to identify African Americans and other minorities,

---

[22]     *Id*.

[23]     *Id*.

[24]     *See* McCarthy, *supra* note 14, at 10.

[25]     Kashmir Hill, *Before Clearview Became a Police Tool, It was a Secret Plaything of the Rich*, N.Y. TIMES (Mar. 5, 2020), https://www.nytimes.com/2020/03/05/technology/clearview-investors.html (last visited Mar. 9, 2020).

[26]     Peter Fussey & Dr. Daragh Murray, *New report raises concerns over Met Police trials of live facial recognition technology*, UNIVERSITY OF ESSEX (July 3, 2019), https://www.essex.ac.uk/news/2019/07/03/met-police-live-facial-recognition-trial-concerns  (last visited Feb. 21, 2020).

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

young people, and women as opposed to when used to identify Caucasian people, older people, and men.[27]

41.     Beyond the dangers posed by misidentification, Clearview AI's operation in Illinois will alter the way Illinois citizen behave. Studies have shown that communities alter their behavior in response to government surveillance. For example, a study analyzing the effects of NYPD's surveillance of Muslim communities concluded that such surveillance "creates a pervasive climate of fear and suspicion that encroaches upon every aspect of their religious, political, and community lives."[28]

42.     In addition to feeling surveilled in their day-to-day activities, individuals will no longer feel comfortable exercising their constitutional rights, such as participating in lawful protests, for fear of identification and retaliation. Clearview AI deprives Illinois citizens of their right to speak and associate with others anonymously. The Supreme Court has recognized that "[a]nonymity is a shield from the tyranny of the majority . . . . It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation . . . at the hand of an intolerant society."[29]

43.     Indeed, the tradition of anonymity in speech is older than the United States itself. Many of the individuals most prominently involved in the American Revolution and ratification

---

[27]     *See* R. W. Vorder Bruegge, et al., *Face Recognition Performance: Role of Demographic Information*, 7 IEEE TRANSACTIONS ON INFO. FORENSICS AND SEC. 6, 1789-1801 (Dec. 2012), http://openbiometrics.org/publications/klare2012demographics.pdf (last visited Feb. 21, 2020);

[28]     Asian American Legal Def. & Educ. Fund, Creating Law Enf't Accountability & Responsibility, and Muslim American Civil Liberties Coal., *Mapping Muslims: NYPD Spying and its Impact on American Muslims* (Mar. 11, 2013), https://www.aaldef.org/press-release/new-report-launched-nypd-spyings-impact-on-american-muslims/ (last visited Feb. 21, 2020).

[29]     *People v. Minnis*, 2016 IL 119563, ¶ 22 (internal citations and quotation marks omitted) (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995).

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

of the United States Constitution "regularly used the shield of pseudonyms" in writings, including, Thomas Paine, John Dickinson, Alexander Hamilton, Arthur Lee, John Jay, Benjamin Franklin, Thomas Jefferson, and James Madison.[30] The loss of anonymity in speech would mean "[t]he Cause of Liberty would often be left to suffer" because individuals speaking out would be left vulnerable to the "Clamour of Party, or the Resentment of Power."[31]

**IV.  Clearview AI is Incapable of Securing its Data.**

44.  On February 26, 2020, Clearview AI began to notify its customers that it had suffered a data breach and that hackers had made off with, *inter alia*, Clearview AI's secretive customer list.[32] This incident highlights one of the central concerns of BIPA: providing Illinois citizens with the ability to prevent their biometric identifiers and biometric information from being collected by entities incapable of securing their data.

45.  As a result of Clearview AI's unauthorized collection of Plaintiffs' and the Class' biometric identifiers and biometric information, coupled with its inability to secure its servers, every Illinois citizen is in danger of having its biometric identifiers and/or biometric information falling into the hands of unknown third parties. As long as Clearview AI is allowed to operate in Illinois, Illinois citizens will be deprived of their right to control their biometric identifiers and biometric information. This is the very danger BIPA was enacted to prevent.

---

[30]  Jordan E. Taylor, *Anonymous criticism helped make America great*, THE WASHINGTON POST (Sept. 8, 2018), https://www.washingtonpost.com/outlook/2018/09/08/anonymous-criticism-helped-make-america-great/ (last visited Feb. 21, 2020).

[31]  *Id.* (quotation marks omitted).

[32]  Betsy Swan, *Facial-Recognition Company That Works With Law Enforcement Says Entire Client List Was Stolen*, THE DAILY BEAST (Feb. 26, 2020), https://www.thedailybeast.com/clearview-ai-facial-recognition-company-that-works-with-law-enforcement-says-entire-client-list-was-stolen (last visited Mar. 17, 2020).

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

### V.      Clearview AI Collected, Captured, and Stored Plaintiffs'
### Biometric Identifiers or Biometric Information without Consent.

46.     Plaintiffs maintained accounts on the following social media, video sharing, and/or digital payment platforms: Facebook, Instagram, LinkedIn, Twitter, Venmo, and YouTube. Clearview AI's scraping practices and business model resulted in (i) photographs depicting Plaintiffs' faces being collected by Clearview AI; (ii) Clearview AI scanning Plaintiffs' face geometries; (iii) the storage of face geometry-based vectors in Clearview AI's database; (iv) the dissemination of Plaintiffs' photographs to Clearview App users; and (v) Clearview AI profiting from their face geometry-based vectors.

#### A.      Plaintiff Melissa Thornley

47.     For a number of years prior hereto and to the present time, Plaintiff Melissa Thornley maintained public social media accounts on the Facebook, Instagram, and LinkedIn social media platforms.

48.     The terms of service for the Facebook, Instagram, and LinkedIn platforms prohibit individuals accessing the Facebook, Instagram, and LinkedIn websites from "scraping" data from the platform absent prior authorization from Facebook, Instagram, or LinkedIn.

49.     Clearview AI did not obtain prior consent from Facebook, Instagram, or LinkedIn nor did Clearview AI give Plaintiff Thornley notice that it was collecting scans of her facial geometry. Plaintiff Thornley did not consent to Clearview AI's collection, capture, storage, and commercialization of her face geometry and/or face geometry-based vectors by virtue of having created and maintained public Facebook, Instagram, and LinkedIn accounts.

50.     Plaintiff Thornley did not know that Clearview AI was creating, capturing, collecting, storing, using, and commercializing her face geometry identifiers. She did not consent to Clearview AI's unlawful creation, capture, collection, storage, use, and commercialization of

FILED DATE: 3/19/2020 5:07 PM    2020CH03377

her face geometry-based data. Clearview AI did not inform her in writing that it was creating, capturing, collecting, storing, using, and commercializing her biometric information or identifiers. Clearview AI did not inform her in writing of the specific purpose and length of term which her biometric identifier or biometric information was being created, captured, collected, stored, used and commercialized, and Clearview AI did not obtain a written release by which Plaintiff Thornley consented to the creation, capture, collection, storage, use, and commercialization of her biometric identifiers and biometric information as required by BIPA.

51.     Clearview AI unlawfully created, captured, collected, stored, used, and commercialized Plaintiff Thornley's biometric identifiers and biometric information, without consent, in violation of BIPA.

52.     Additionally, Clearview AI has not developed and made available to the public, nor implemented and complied with, a written policy outlining Clearview AI's handling of Plaintiff Thornley's biometric identifiers and biometric information as required by BIPA. It has, thus, violated BIPA requirements that such a policy be adopted and that Clearview AI comply with the retention and destruction provisions of such a policy.

**B.    Plaintiff Deborah Benjamin-Koller**

53.     For a number of years prior hereto and to the present time, Plaintiff Deborah Benjamin-Koller maintained social media accounts on the Facebook, Instagram, and Twitter social media platforms.

54.     The terms of service for the Facebook, Instagram, and Twitter platforms prohibit individuals accessing the Facebook, Instagram, and Twitter websites from "scraping" data from the platform absent prior authorization from Facebook, Instagram, or Twitter.

FILED DATE: 3/19/2020 5:07 PM    2020CH03377

55.     Clearview AI did not obtain prior consent from Facebook, Instagram, or Twitter nor did Clearview AI give Plaintiff Benjamin-Koller notice that it was collecting scans of her facial geometry. Plaintiff Benjamin-Koller did not consent to Clearview AI's collection, capture, storage, and commercialization of her face geometry and/or face geometry-based vectors by virtue of having created and maintained public Facebook, Instagram, and Twitter accounts.

56.     Plaintiff Benjamin-Koller did not know that Clearview AI was creating, capturing, collecting, storing, using, and commercializing her face geometry identifiers. She did not consent to Clearview AI's unlawful creation, capture, collection, storage, use, and commercialization of her face geometry-based data. Clearview AI did not inform her in writing that it was creating, capturing, collecting, storing, using, and commercializing her biometric information or identifiers. Clearview AI did not inform her in writing of the specific purpose and length of term which her biometric identifier or biometric information was being created, captured, collected, stored, used and commercialized, and Clearview AI did not obtain a written release by which Plaintiff Benjamin-Koller consented to the creation, capture, collection, storage, use, and commercialization of her biometric identifiers and biometric information as required by BIPA.

57.     Clearview AI unlawfully created, captured, collected, stored, used, and commercialized Plaintiff Benjamin-Koller's biometric identifiers and biometric information, without consent, in violation of BIPA.

58.     Additionally, Clearview AI has not developed and made available to the public, nor implemented and complied with, a written policy outlining Clearview AI's handling of Plaintiff Benjamin-Koller's biometric identifiers and biometric information as required by BIPA. It has, thus, violated BIPA requirements that such a policy be adopted and that Clearview AI comply with the retention and destruction provisions of such a policy.

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

### C.     Plaintiff Josue Herrera

59.     For a number of years prior hereto and to the present time, Plaintiff Josue Herrera maintained accounts on the Facebook, Instagram, and LinkedIn social media platforms, the digital payment platform Venmo, and on the YouTube video-sharing platform.

60.     The terms of service for the Facebook, Instagram, LinkedIn, Venmo, and YouTube platforms prohibit individuals accessing the Facebook, Instagram, LinkedIn, Venmo, and YouTube websites from "scraping" data from the platform absent prior authorization from Facebook, Instagram, LinkedIn, Venmo, and YouTube.

61.     Clearview AI did not obtain prior consent from Facebook, Instagram, LinkedIn, Venmo, and YouTube nor did Clearview AI give Plaintiff Josue Herrera notice that it was collecting scans of his facial geometry. Plaintiff Josue Herrera did not consent to Clearview AI's collection, capture, storage, and commercialization of his face geometry and/or face geometry-based vectors by virtue of having created and maintained public Facebook, Instagram, LinkedIn, Venmo, and YouTube accounts.

62.     Plaintiff Josue Herrera did not know that Clearview AI was creating, capturing, collecting, storing, using, and commercializing his face geometry identifiers. He did not consent to Clearview AI's unlawful creation, capture, collection, storage, use, and commercialization of his face geometry-based data. Clearview AI did not inform him in writing that it was creating, capturing, collecting, storing, using, and commercializing his biometric information or identifiers. Clearview AI did not inform him in writing of the specific purpose and length of term which his biometric identifier or biometric information was being created, captured, collected, stored, used and commercialized, and Clearview AI did not obtain a written release by which Plaintiff Josue

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

Herrera consented to the creation, capture, collection, storage, use, and commercialization of his biometric identifiers and biometric information as required by BIPA.

63.     Clearview AI unlawfully created, captured, collected, stored, used, and commercialized Plaintiff Josue Herrera's biometric identifiers and biometric information, without consent, in violation of BIPA.

64.     Additionally, Clearview AI has not developed and made available to the public, nor implemented and complied with, a written policy outlining Clearview AI's handling of Plaintiff Josue Herrera's biometric identifiers and biometric information as required by BIPA. It has, thus, violated BIPA requirements that such a policy be adopted and that Clearview AI comply with the retention and destruction provisions of such a policy.

## FRADULENT CONCEALMENT & TOLLING

65.     Clearview AI concealed that it was performing scans of Plaintiffs' and the Class's facial geometry and that it was creating, capturing, collecting, storing, using, and commercializing the biometric identifiers and information of Plaintiffs and the Class. Thus, neither Plaintiffs nor any other reasonable member of the Class had any way of knowing about Clearview AI's conduct detailed herein and could not have discovered, and did not, in fact, learn of the conduct until it was recently reported.

66.     For these reasons, any statute of limitations or statute of repose that otherwise may apply to the claims of Plaintiffs and the members of the Class should be estopped or tolled.

## CLASS ACTION ALLEGATIONS

67.     Plaintiffs bring this action pursuant the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, on their own behalf and as representatives of all other similarly-situated individuals, defined as follows (the "Class"):

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

All Illinois residents included in Clearview AI's facial scan Database without their consent from 2016 to the present.[33]

68.     This action is properly maintained as a class action under 735 ILCS 5/2-801 because: (1) the class is so numerous that joinder of all member is impracticable ("Numerosity"); (2) there are questions of law or fact that are common to the class ("Commonality"); (3) Plaintiffs' claims are typical of the claims of the class ("Typicality"); and (4) Plaintiffs will fairly and adequately protect the interest of the class ("Adequate Representation").

69.     **Numerosity**. The Class likely consists of thousands, if not millions, of individuals, and the members can be identified through Clearview AI's records. The exact number of members of the Class is unknown and unavailable to Plaintiffs at this time, but individual joinder in this case is impracticable.

70.     **Predominant Common Questions**. The Class's claims present common questions of law and fact and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

a.   Whether Clearview AI has collected, captured, created, or otherwise obtained; stored, used, and commercialized; and disseminated or disclosed Plaintiffs' and the Class's biometric identifiers or biometric information;

b.   Whether Clearview AI properly informed Plaintiffs and the Class that it was collecting, capturing, creating, or otherwise obtaining; storing, using, and commercializing; and disseminating or disclosing their biometric identifiers or biometric information;

c.   Whether Clearview AI obtained a written release (as defined in 740 ILCS 14/10) to collect, capture, create, or otherwise obtain; store, use, and commercialize; and disseminate or disclose Plaintiffs' and the Class's biometric identifiers or biometric information;

d.   Whether Clearview AI developed, made available to the public, and complied with a written policy, establishing a retention schedule and guidelines for

---

[33]     Plaintiff has defined the Class based on currently available information and hereby reserves the right to amend the definition of the Class, including, without limitation, the Class Period.

permanently destroying biometric identifiers or biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever comes first;

e.  Whether Clearview AI used Plaintiffs' and the Class's biometric identifiers or biometric information to identify them;

f.  Whether Clearview AI's collection, capture, or creation; storage, use, and commercialize; or disseminated or disclosed of Plaintiffs' and the Class's biometric identifiers or biometric information violated BIPA.

g.  Whether Clearview AI's failure to develop, make available to the public, and comply with a written policy, establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever comes first, violated BIPA; and

h.  Whether Clearview AI's violations of BIPA were committed intentionally, recklessly, or negligently.

71.  **Typicality**. Plaintiffs' claims are typical of the claims of the other members of the proposed Class. Plaintiffs and Class members were aggrieved as a result of Clearview AI's wrongful conduct that is uniform across the Class.

72.  **Adequate Representation**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel that is competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class, and Clearview AI has no defenses unique to Plaintiffs. Plaintiffs and Plaintiffs' counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class.

73.  **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable.

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

It would be unduly burdensome to the Court for each class member to pursue their claims individually. This proposed class action presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

74.     Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)
Failure to Obtain Informed Written Consent and Release before
Obtaining Biometric Identifiers or Biometric Information
(On Behalf of Plaintiffs and the Class)**

75.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

76.     BIPA requires companies to obtain informed written consent from individuals before collecting or capturing their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b).

77.     Clearview AI is a "private entity" pursuant to 740 ILCS 14/10.

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

78. Plaintiffs and the Class are individuals who have had their "biometric identifiers" (face geometry data) collected and captured by Clearview AI.

79. Plaintiffs' and the Class's biometric identifiers were used to identify them and therefore constitute "biometric information" as defined by 740 ILCS 14/10.

80. Clearview AI systematically and automatically collected, used, stored, and disseminated Plaintiffs' and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

81. Clearview AI did not inform Plaintiffs and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, and used nor did Clearview AI inform Plaintiffs and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

82. By collecting, storing, and using Plaintiffs' and the Class's biometric identifiers and/or biometric information as described herein, Clearview AI violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information.

83. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Clearview AI to comply with BIPA's requirements for the collection, capture, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

**SECOND CLAIM FOR RELIEF**

**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(c)**
**Profiting from a Person's Biometric Identifier or Biometric Information**
**(On Behalf of Plaintiffs and the Class)**

84. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

85. BIPA prohibits private entities in possession of an individual's biometric identifier or biometric information from "profit[ing] from a person's . . . biometric identifier or biometric information. 740 ILCS 14/15(c).

86. Clearview AI is a private Delaware corporation.

87. Clearview AI, as detailed above, has captured and stored Plaintiffs' and the Class's biometric identifiers and biometric information as defined by 740 ILCS 14/10.

88. Clearview AI has entered into contracts with private and public entities, including the Chicago Police Department, through which Clearview AI has exploited Plaintiffs', and the Class's, biometric identifiers and/or biometric information for profit in violation of 740 ILCS 14/15.

89. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Clearview AI to comply with BIPA's requirements for the collection, capture, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

## THIRD CLAIM FOR RELIEF

**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(a)**
**Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule**
**(On Behalf of Plaintiffs and the Class)**

90.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

91.     BIPA requires that private companies in possession of biometric identifiers and biometric information develop, make available to the public, and comply with a written policy setting forth a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

92.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" (face geometry data) collected and captured by Clearview AI.

93.     Plaintiffs' and the Class's biometric identifiers were used to identify them and therefore constitute "biometric information" as defined by 740 ILCS 14/10.

94.     Clearview AI systematically and automatically collected, captured, used, stored, and disseminated Plaintiffs' and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

95.     Clearview AI has failed to develop, make available to the public, and comply with a written policy setting forth retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's biometric data and will not destroy Plaintiffs' or the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company, in violation of BIPA.

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

96.     On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Clearview AI to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the proposed Class respectfully request that the Court enter an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs Melissa Thornley, Deborah Benjamin-Koller, and Josue Herrera as Class Representatives, and appointing Silver Golub & Teitell LLP, Miller Shakman Levine & Feldman LLP, and Forde & O'Meara, LLP as Class Counsel;

B.     Declaring that Clearview AI's actions, as set out above, violate BIPA;

C.     Awarding statutory damages of $5,000 for each intentional and /or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.     Declaring that Clearview AI's actions, as set forth above, were intentional and/or reckless;

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

E.     Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class, including an Order requiring Clearview AI to collect, store, use, and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.     Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

G.     Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable;

H.     Awarding such other and further relief as equity and justice may require.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.


Dated: March 19, 2020                              Respectfully submitted,

                                                   MELISSA THORNLEY
                                                   DEBORAH BENJAMIN-KOLLER
                                                   JOSUE HERRERA

                                                   /s/ Daniel M. Feeney
                                                   One of their attorneys


Daniel M. Feeney
Zachary J. Freeman
Miller Shakman Levine & Feldman LLP
Firm ID: 90236
180 North LaSalle Street, Suite 3600
Chicago, IL 60601
Tel. (312) 263-3700
Fax (312) 263-3270
Email: dfeeney@millershakman.com
        zfreeman@millershakman.com

David S. Golub (*pro hac vice*)
Steven L. Bloch (*pro hac vice*)
Ian W. Sloss (*pro hac vice*)
Silver Golub & Teitell LLP

FILED DATE: 3/19/2020 5:07 PM   2020CH03377

184 Atlantic Street
Stamford, CT 06901
Tel. (203) 325-4491
Fax (203) 325-3769
Email: dgolub@sgtlaw.com
       sbloch@sgtlaw.com
       isloss@sgtlaw.com

Kevin M. Forde
Brian P. O'Meara
Kevin R. Malloy
Forde & O'Meara LLP
111 West Washington Street
Suite 1100
Chicago, IL  60602
Tel. (312) 641-1441
Email:  kforde@fordellp.com
       bomeara@fordellp.com
       kmalloy@fordellp.com

29

## SUPREME COURT RULE 222(b) DAMAGES AFFIDAVIT

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that this civil action seeks in excess of $50,000 on behalf of the Plaintiffs and the proposed Class.


Dated:  March 19, 2020                        /s/ Daniel M. Feeney _____
                                              One of Plaintiffs' attorneys


Daniel M. Feeney
Zachary J. Freeman
Miller Shakman Levine & Feldman LLP
Firm ID: 90236
180 North LaSalle Street, Suite 3600
Chicago, IL 60601
Tel. (312) 263-3700
Fax. (312) 263-3270
Email: dfeeney@millershakman.com
        zfreeman@millershakman.com


David S. Golub (*pro hac vice*)
Steven L. Bloch (*pro hac vice*)
Ian W. Sloss (*pro hac vice*)
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, CT 06901
Tel. (203) 325-4491
Fac. (203) 325-3769
Email:  dgolub@sgtlaw.com
        sbloch@sgtlaw.com
        isloss@sgtlaw.com


Kevin M. Forde
Brian P. O'Meara
Kevin R. Malloy
Forde & O'Meara LLP
111 West Washington Street
Suite 1100
Chicago, IL  60602
Tel. (312) 641-1441
Email:  kforde@fordellp.com
        bomeara@fordellp.com
        kmalloy@fordellp.com

FILED DATE: 3/19/2020 5:07 PM   2020CH03377